679 So.2d 472 (1996)
STATE of Louisiana, Appellee,
v.
Vickie C. BRANTLEY, Appellant.
No. 28542-KA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1996.
*473 Michael Dale Lee, Baton Rouge, Robert C. White, for Appellant.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, Whitley Graves, Assistant District Attorney, for Appellee.
Before WILLIAMS, STEWART and GASKINS, JJ.
GASKINS, Judge.
The defendant, Vickie C. Brantley, pled guilty to one count of theft of $500.00 or more, a violation of La.R.S. 14:67(B)(1). After an extensive sentencing hearing, the court sentenced the defendant to serve five years imprisonment at hard labor (four years suspended and one year to be served "without good time") and five years supervised probation conditioned upon employment and restitution of $79,388.31. The court also fined the defendant $3,000.00 or, in default of payment, sentenced her to serve an additional 18 months in jail. The defendant now appeals. We amend the defendant's sentence to correct errors patent and, as amended, affirm.

FACTS
The defendant was an administrative employee with the City of Minden. Among her duties were the physical receipt and processing of certain payments to the city, including ad valorem taxes, property taxes, sales taxes, occupational licenses and various general fund receipts. In the summer of 1994, it was discovered that she had stolen $1,520 in cash from the city. She admitted this theft and made restitution. An investigation and an internal audit of the accounts to which the defendant had access revealed that she had actually stolen a much more substantial amount of money over a period of several years.
The defendant was charged with one count of theft of $500 or more. She pled guilty to this charge in June 1995. A sentencing hearing was conducted in October 1995 to determine the extent of the city's losses.
The state presented the testimony of Michael Wade Wise, a certified public accountant with the accounting firm of Jamieson, Wise & Company. The Jamieson firm routinely conducted the annual audit and financial statement for the city. In the instant case, it was engaged to conduct a special audit of the city's accounts to determine what, if any, additional funds were missing as a result of the defendant's misconduct.
The Jamieson firm audited the city's occupational license and franchise tax revenues. It compared the city's records to the records of 37 business taxpayers whose tax payments showed a variance of more than $10.00 over the three-year period from 1992 to 1994. Mr. Wise testified that they contacted 50 of the 189 taxpayers showing a variance during this time period and that 37 of them responded to the firm's request for the records in question. (However, the Jamieson report itself stated that 39 taxpayers responded.) In 22 cases, they found substantial discrepancies between the taxpayers' city receipts and the funds deposited into the appropriate city accounts. In one caseBoston Old Colony Insurancethe city accounts were credited $13.33 where the insurance company had actually paid $1,753.37, a loss of $1,740.04 to the city. Notably, one substantial discrepancy was in favor of the city; this amount was subtracted from the losses. In the occupational license and franchise tax department, the auditors determined from the taxpayer *474 responses that the losses to the city over three years totaled $16,072.05.
The Jamieson firm also audited the city's sales tax revenues. It discovered that certain checks issued to the city by the Webster Parish Centralized Sales & Use Tax Collection Agency had been diverted away from the Minden sales tax account. These checks were instead inappropriately cashed by the defendant out of the general fund or the water and electric system fund. The sales tax account, controlled by the defendant, never received the cash from the sales tax checks. Ruby Sanders, Minden administrative assistant, testified that the defendant did not have the authority to cash the checks or otherwise divert the funds. The Jamieson audit determined that $57,168.44 was missing from the city's sales tax account because of the improperly cashed checks. An internal investigation revealed that the defendant had also stolen $428.90 from video poker revenues. In total, the evidence showed that the defendant misappropriated at least $73,669.39. None of the missing funds were recovered.
Larry Riffle, the Minden city clerk and treasurer, testified that another Minden employee had stolen from a cash drawer and left the city's employ in 1992. While he did not know if that employee had been prosecuted, he stated that no financial audit was conducted at the time because that incident involved only "a petty cash type of theft." Mr. Riffle also testified that the defendant was the only city employee who regularly handled the daily receipt and deposit of cash of general fund revenues.
At the close of the sentencing hearing, the trial court enumerated the listed factors in La.C.Cr.P. art. 894.1(B) that it found present in this case. The court found that (4) the defendant used her position of public trust with the city to facilitate the commission of the offense, (9) her conduct caused the city a significant economic loss, (11) there were many thefts for which separate sentences were not imposed, and (14) the crime was a major economic offense. Based upon the presence of these factors, the court sentenced the defendant to a term of five years at hard labor, four years of which were suspended, and imposed a fine of $3,000.00 or, in default of payment, an additional 18-month imprisonment. The judge directed that the one non-suspended year of imprisonment be served without good time or work credit. The court suspended the imposition of the fine and court costs for 60 days from sentencing.
The trial court also placed the defendant on five years supervised probation under several conditions. Chief among these conditions was that the defendant pay restitution to the city in the amount of $79,388.31, the sum of the missing money from the occupational licenses, sales and franchise tax accounts, video poker, and the cost of the audit to discover the losses, $5,718.92. Restitution was to be paid either in a lump sum or in monthly installments at the maximum amount payable according to the defendant's financial ability. The court also included employment as a condition of probation.
At the conclusion of sentencing, defense counsel stated that they "would respectfully assign error." However, defense counsel stated no specific basis for complaining of the sentence and never filed a motion to reconsider sentence.
From her conviction and sentence, the defendant now appeals, urging thirteen assignments of error.

GOOD TIME
The defendant contends that the trial court erred in denying her "good time" diminution of sentence.
Generally, a trial judge is without authority to deny a defendant good time eligibility. State v. Melancon, 536 So.2d 430 (La.App. 4th Cir.1988); State v. Langlois, 620 So.2d 1193 (La.App. 4th Cir.1993), writ denied, 625 So.2d 1042 (La.1993); State v. Miller, 93-1096 (La.App. 4th Cir. 5/17/94), 637 So.2d 1115, writ denied, 94-1584 (La. 11/04/94), 644 So.2d 1055; State v. Brown, 93-2305 (La.App. 4th Cir. 11/17/94), 645 So.2d 1282. Such a denial is error patent. Langlois, supra; Miller, supra; Brown, supra; State v. Marisco, 538 So.2d 748 (La. App. 5th Cir.1989); State v. Payne, 612 So.2d 153 (La.App. 5th Cir.1992); State v. Kelly, *475 92-2446 (La.App. 4th Cir. 7/8/94), 639 So.2d 888, writ denied, 94-2087 (La. 1/6/95), 648 So.2d 921.
See also State v. Timmons, 94-5 (La.App. 3d Cir. 6/1/94), 640 So.2d 649, 650 and Jackson v. Phelps, 506 So.2d 515, 517 (La.App. 1st Cir.1987), writ denied, 508 So.2d 829 (La.1987). In Jackson, supra, the court stated:
The sentencing judge has no such [authority or discretion] in the matter of good time credit, which is uniformly allowed by statute to inmates in the custody of the Department of Corrections except for those convicted of certain offenses, LSA-R.S. 15:571.3, without input by the trial judge. Any discretion in the assessment of the good time credit is exercised by the director of corrections, who establishes the rules and procedures as well as determining when good time has been earned by a particular inmate. Thus, whether a sentencing judge articulates a defendant's eligibility for good time credit under Sec. 571.3 is completely irrelevant to whether that defendant may receive itsuch a pronouncement is not part of the broad sentencing discretion granted to the trial judge.
The Louisiana Supreme Court expressed similar sentiments in State ex rel. Simmons v. Stalder, 93-1852 (La.1/26/96), 666 So.2d 661; State v. Ryan, 619 So.2d 537 (La.1993), and State v. Allen, 594 So.2d 884 (La.1992), citing the Fourth Circuit's landmark Melancon case with approval.
In recent years, the legislature has amended the language of La.R.S. 15:571.3 to permit the trial court limited discretion in the good time eligibility of certain sex offenders, pursuant to La.R.S. 15:537, and certain crimes of violence under La.C.Cr.P. Art. 890.1. However, these provisions have no bearing upon the sentence of the present defendant.
Accordingly, we amend the defendant's sentence to delete the denial of good time diminution.

EXCESSIVE SENTENCE
In her assignments of error, the defendant raises a myriad of complaints pertaining to her sentence. However, since the defendant failed to make or file a motion to reconsider sentence, she is not entitled to review of those claims.
La.C.Cr.P. art. 881.1(D) provides that failure to make or file a motion for reconsideration of sentence precludes a defendant from challenging the sentence on appeal for any ground, including excessiveness, not specified in the motion. State v. Scott, 27104 (La. App.2d Cir. 6/21/95), 658 So.2d 251; State v. Lane, 25805 (La.App.2d Cir. 3/30/94), 634 So.2d 958; State v. Butler, 25563 (La.App.2d Cir. 1/19/94), 631 So.2d 22; State v. Bush, 604 So.2d 1383 (La.App.2d Cir.1992).
In State v. Mims, 619 So.2d 1059 (La. 1993), the supreme court said:
Under Article 881.1 the defendant must file a motion to reconsider and set forth the "specific grounds" upon which the motion is based in order to raise an objection to the sentence on appeal. However, in order to preserve a claim of constitutional excessiveness, the defendant need not allege any more specific ground than that the sentence is excessive. If the defendant does not allege any specific ground for excessiveness or present any argument or evidence not previously considered by the court at original sentencing, then the defendant does not lose the right to appeal the sentence; the defendant is simply relegated to having the appellate court consider the bare claim of excessiveness. Article 881.1 only precludes the defendant from presenting arguments to the court of appeal which were not presented to the trial court at a point in the proceedings when the trial court was in a position to correct the deficiency. (Emphasis added.)
Defense counsel's objection after the imposition of sentence did not complain of any specific ground, including excessiveness, upon which the sentence should be reconsidered. Therefore, this court is not required to rule upon the excessiveness of the defendant's sentence because she never alleged that her sentence was excessive in the lower court. As we stated in State v. Robinson, 27225 (La.App.2d Cir. 9/27/95), 661 So.2d 527:
We do not read the Louisiana Supreme Court's opinion in State v. Mims, 619 So.2d *476 1059 (La.1993), as having obviated the statutory requirement that a motion to reconsider sentence be filed in order to preserve a claim of excessive sentence for appellate review.
Furthermore, even if we reviewed the defendant's sentence, we find that it is appropriate for her crime. Although the 25-year-old defendant in the instant case is a first felony offender and the mother of two young children, she stole a substantial quantity of money from a public entity where she was entrusted with the responsibility of handling public funds. Further, the trial court noted that full restitution to the victim was unlikely. Her sentence does not shock our sense of justice.
See and compare State v. Armstrong, 557 So.2d 1160 (La.App.2d Cir.1990), writ denied, 564 So.2d 320 (La.1990) [two concurrent six-year sentences for an attorney convicted of felony theft of a substantial sum of client funds over a period of several years; the court noted that the attorney benefited from the plea bargain and that the thefts violated his clients' trust]; State v. LeBlanc, 578 So.2d 1036 (La.App. 3d Cir.1991) [10-year maximum term of imprisonment for 29-year-old male defendant with "impressive" criminal record who stole $121,500 from five investors]; State v. Gaines, 557 So.2d 340 (La. App. 3d Cir.1990) [five year hard labor suspended sentence, with two years in parish jail as condition of probation, for 21-year-old first offender who received benefit from plea bargain and had a juvenile record]; State v. Jones, 546 So.2d 1343 (La.App. 3d Cir.1989) [four concurrent sentences of seven years imprisonment at hard labor for a first offender who stole money from her insurance clients; according to the sentencing court, the defendant received a substantial benefit from the plea bargain and restitution to the victims was unlikely]; State v. Delaneuville, 545 So.2d 659 (La.App. 5th Cir.1989), writ denied, 551 So.2d 1335 (La.1989), [five years imprisonment at hard labor, three years suspended, and five years supervised probation with conditions of restitution, community service and counseling for a law firm bookkeeper who stole $110,000.00 from her firm over a period of years; the defendant was a first felony offender and the mother of two grade-school age children].
These assignments of error are meritless.

EQUAL PROTECTION
The defendant also complains that she was deprived of her rights to equal protection because she, a white female, was prosecuted for theft, whereas previously another city employee, a black female, who confessed to theft was not prosecuted and was allowed to simply make restitution and resign. However, we note that the record fails to support this claim. Nothing in the record established the race of this other employee, who was apparently guilty of only a petty theft, as opposed to the substantial theft perpetrated by the defendant. Moreover, no evidence established whether or not the other employee was prosecuted.
This assignment of error is meritless.

ERROR PATENT
We note that the trial court imposed an illegally long period of default time, 18 months, to be served if the defendant is unable to pay her $3,000.00 fine. La.C.Cr.P. art. 884 permits the imposition of only one year of default time. Therefore, we delete the default time in excess of one year, pursuant to La.C.Cr.P. art. 882. See State v. Laviolette, 576 So.2d 1000 (La.App. 3d Cir. 1991), writ denied, 581 So.2d 683 (La.1991).

CONCLUSION
The defendant's conviction is affirmed. We amend the defendant's sentence to delete the denial of good time diminution and to reduce the default time to one year. As amended, the sentence is affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.