JjCARAWAY, J.
The defendant, Lee Edward Donald (“Donald”) was convicted of violating La. R.S. 14:95.1[1] which makes it unlawful for certain convicted felons to possess a firearm. At trial, over Donald’s objection, the trial court allowed the introduction of documents from the Los Angeles Police Department (“LAPD”) which were used to prove that Donald is the same individual that was previously arrested and convicted in the California Superior Court of voluntary manslaughter.[2] Donald was convicted by a jury and now appeals urging error in the trial court’s admission of the LAPD documents and other trial errors regarding the admissibility of evidence. Finding the LAPD documents improperly authenticated under La. C.E. arts. 902 and 904, we reverse the conviction and remand for a new trial.

Facts

On February 20, 1998, Donald was arrested after a call was made to the Shreveport Police Department complaining of a person with a gun. Three witnesses identified Donald as the person who pointed a gun at them.
The day before, February 19, 1998, Alveria Collins (“Collins”), a seventh grader, encountered the defendant in her apartment complex while she was on her way to school. Collins claims that Donald was walking toward her while holding his penis. She turned around and ran away.
The next day, Collins was with her grandmother, Sandra Gilliam, when she again saw Donald. Collins pointed out the defendant to Gilliam while she and her | ^grandmother were seated in an automobile. Donald approached the car, pulled out a handgun, and asked Gilliam if she had a problem. Gilliam instructed another granddaughter, LaTamara Dallas, to call the police. Thereafter, Donald continued to walk past Collins and Gilliam without further incident.
Officers from the Shreveport Police Department responded and located Donald a couple of blocks from where the incident occurred. They found and recovered the handgun that Donald possessed. It was later discovered that the defendant had been convicted of voluntary manslaughter, a felony, in California.

Discussion

Authenticity of OuUof-State Conviction Documents

Donald urges that the trial court erred when it held that the LAPD booking and identification record (“S-2”) containing a thumb print purporting to be his was properly authenticated and admissible.
The admissibility of the California records was first presented to the trial court in a pre-trial motion by the state. Donald responded to the state with his own motion in limine to preclude the state’s mentioning and detailing the nature of the California conviction and the state’s introduction of the California records. To support his motion which was premised on the ruling of the United States Supreme Court decision in Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), Donald stipulated and judicially confessed in his pleading the validity of the predicate California offense. At the hearing on these motions, however, Donald’s counsel only questioned the authenticity of the *147 California records and did not argue the substance of his motion to preclude the detailing of the predicate offense under Old Chief. The trial court reviewed the certifications on the California documents and ruled that the documents were properly authenticated under the Louisiana Code of Evidence.
|sAt trial, the California records presented by the state originated from two government entities, the Superior Court for Los Angeles County and the Los Angeles Police Department. State exhibit number 7 (“S-7”) is a certified document from the Superior Court for Los Angeles County revealing the conviction of Lee Edward Donald for voluntary manslaughter in case number A630356. S-7 is certified as a true copy of the original under the signature of an “Executive Officer/Clerk of Court of the Superior Court.” Although Donald did not dispute the authenticity of S-7,[3] the document contains no fingerprint of the California defendant to allow for the establishment that the California defendant identified in S-7 was one and the same person as Donald.
A second document submitted by the state at trial, S-2, is a “Booking and Identification Record” that has defendant’s name, birth date, social security number, date arrested, offense, booking number and a thumb print. That document, in conjunction with other LAPD documents, was necessary to identify and link Donald as the California felon whose conviction is evidenced by S-7. On the reverse side of S-2 is a certification containing the following information stamped on the document along with a stamped emblem for the LAPD and signed by “Yang”:
“THIS IS A TRUE CERTIFIED COPY OF THE DOCUMENT FILED IN THE LOS ANGELES POLICE DEPARTMENT’S RECORDS & IDENTIFICATION DIVISION BY: /s/Yang SERIAL E9118 DIVISION: R&I DATED 6-30-98”
The state attempted to show that Donald was the same person as the individual convicted of voluntary manslaughter in California by taking Donald’s fingerprints in open court. Then, the state’s expert testified that the fingerprints on S-2 | ¿matched the set taken in open court. After the expert’s testimony, the state introduced S-2 into the record. Again, defense counsel’s objection to the admittance of this evidence was overruled by the trial court.
A close look at La. C.E. arts. 902 and 904 is in order to determine if the trial court was in error in ruling that S-2 was properly authenticated. La. C.E. art. 902 states in pertinent part:
“Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
(1) Domestic public documents under seal. A document bearing a seal purporting to be that of ... any state, ... or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.
(2) Domestic public documents not under seal, (a) Domestic public documents generally. A document purporting to bear the signature in his official capacity of an officer or employee of any entity included in Paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that his signature is genuine.”
La. C.E. art. 904 states:
“When an original public document is deemed authentic without proof by extrinsic evidence as provided in Article *148 901(1), (2), or (3), a purported copy of the document also shall be deemed authentic when certified as true or correct by the custodian or other person authorized to make that certification, by certificate complying with Article 902(1), (2), or (3).”
Since the documents that were introduced into evidence were clearly copies and not originals, La. C.E. art. 904 applies. However, as La. C.E. art. 904 states, the requirements of La. C.E. art. 902(1) or (2) must be complied with before a copied document is deemed authentic. Article 904 states that the custodian’s certificate must be executed in a form complying with the seal requirements of Article 902(1) or (2).
The rule of authentication evidencing the genuineness of a particular document must always be satisfied; for an official document may belong to a class | Bclearly admissible, but still the document actually offered must be authenticated as genuinely that which it purports to be. State v. Martin, 356 So.2d 1370, 1374 (La.1978). La. C.E. art. 902(1) does not require extrinsic evidence of authenticity if the document bears a seal purporting to be that of the United States or any state thereof and a signature purporting to be an attestation or execution. If the officer attesting to the document does not have a seal, then La. C.E. art. 902(2) provides that the document is self-authenticating if it bears the seal of the official who certifies the signature and capacity of the original signer. Thus, under either Article 902(1) or 902(2), a seal must be on the document. State v. Langlois, 620 So.2d 1193 (La.App. 4th Cir.1993), writ denied 625 So.2d 1042 (La.1993), and appeal after remand, 96-0084 (La.App. 4th Cir.5/21/97), 695 So.2d 540, writ granted in part and remanded by 97-1491 (La.11/14/97), 703 So.2d 1281. See, Official Comment (c) to La. C.E. art. 902 stating that “the affixing of an official seal is an indispensable requirement for certifying the authenticity of an original domestic public document.”
In Langlois, supra, the court of appeal dealt with a similar evidentiary problem. In the state’s effort to prove that the defendant was convicted of prior felonies in California, one of the documents admitted into evidence was certified by the Keeper of Records of the California Bureau of Identification. However, no seal was on any of the certified documents as required by La. C.E. art. 902(1), nor was there an additional certification as required by La. C.E. art. 902(2). Id. at 1196. Under those circumstances, the court concluded that the evidence was not properly authenticated, and that Langlois could not be adjudicated a multiple offender. Following Langlois, the third circuit in State v. Kennerson, 96-1518 (La.App. 3d Cir.5/7/97), 695 So.2d 1367 has also held that out-of-state documents | ¿require either official seal or multiple attestations under Acts of Congress, citing La. C.E. art. 902(4).
Although S-2 bears an official stamp of the LAPD, the jurisprudence and other sources indicate that a “seal” and a “stamp” are separate and distinct. For example, La. R.S. 9:226 requires that for certification of a birth certificate, a person born outside of Louisiana may submit a copy of his birth certificate under the raised seal or stamp of the vital statistics registration authority of his place of birth (emphasis added). Commenting with approval on the ruling of a federal district court’s determination that authentication under Fed.R.Evid. 902 was not demonstrated, the United States fifth circuit noted that “[n]either the fingerprint card nor the police record sheet is under seal and no public officer of the Denver Police Department certified under seal that the signature is genuine; the certification on the fingerprint card is only a rubber stamp.” United States v. Dockins, 986 F.2d 888, 894 (5th Cir.1993), cert. denied, 510 U.S. 850, 114 S.Ct. 149, 126 L.Ed.2d 111 (1993). In King v. Guynes, 118 La. 344, 42 So. 959, 960 (1907), the Louisiana Supreme Court stated that the purpose of a seal is to *149 attest in a formal manner to the execution of an instrument, referencing Black’s Law Dictionary. Black’s Law Dictionary, 6 th edition (1990) defines a “public seal” as follows:
Public seal. A seal belonging to and used by one of the bureaus or departments of government, for authenticating or attesting documents, process, or records. An impression made of some device, by means of a piece of metal or other hard substance, kept and used by public authority.
Based upon the above review, we are constrained to hold that the LAPD document, S-2, was not self-authenticating and was improperly admitted as evidence. Though the substance of the document may be considered trustworthy and clearly admissible under the exception to the hearsay rule for public |7documents, La. C.E. art. 803(8), “the rule of authentication evidencing the genuineness of a particular document has always to be satisfied.” State v. Martin, supra. Donald’s assignment of error has merit and establishes that inadmissible evidence was used to prove an essential element of the crime.[4]

Other Crimes Evidence

Donald also claims that it was error for the trial court to allow Collins’ testimony regarding the incident prior to the day of his arrest where the defendant exposed himself to her. It is the defendant’s position that such testimony served only to inflame the jury and create undue prejudice against him. Because of our remand of this case which we address below, we will also consider this assignment of error.
The state argues that Collins’ testimony on this subject was necessary to adequately relate the entire story of what transpired between her and Donald up until the time he pulled his handgun on her and her grandmother. It is the state’s position that the underlying facts are so intertwined with the more immediate facts surrounding the actual offense that the entire story is necessary to present its case.
This court considered this issue in State v. Coates, 27,287 (La.App.2d Cir.9/27/95), 661 So.2d 571, writ denied, 95-2613 (La.2/28/96), 668 So.2d 365, where it was determined that although “... generally inadmissible, evidence of other crimes, wrongs or acts may be introduced when it ‘relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding,’ ” citing, La. C.E. art. 404(B)(1). The Louisiana Supreme Court specifically approved the admission of other crimes evidence “when it is related and intertwined with the charged offense to such an extent that the state could not |shave accurately presented its case without reference to it.” State v. Coates, supra, at 578, citing, State v. Brewington, 601 So.2d 656 (La.1992) (per curiam). Other crimes evidence is admissible when it completes the story of the crime by proving the connexity of events in time and place. Coates, supra, citing, Brewington, supra.
Additionally, this court has recently considered the issue of other crimes evidence in State v. Wafer, 31,078 (La.App.2d Cir.9/23/98), 719 So.2d 156. In Wafer, we cited an excerpt from the Handbook on Louisiana Evidence Law:
The emphasis here should be on whether the other crime, wrong or act is “part and parcel” of the crime charged, and is not really being offered for the purpose of showing that the accused is a person of bad character.
Id. at 166. The Wafer court concluded that the trial court had correctly ruled that an inference to that defendant’s other bad acts was not an integral part of the offense of second degree murder. Id.
*150 Immediately prior to the trial in this matter, an evidentiary hearing was conducted to determine if Collins’ testimony about the incident of February 19, 1998 would be admissible. At that time, the trial court determined that Collins’ testimony regarding the defendant’s previous act of exposing himself would be admitted because “ ... the facts are intertwined with respect to the identity element of the case.” However, we do not believe that the “exposure” testimony was essential to the “identity element,” because the identity of the defendant was not crucial to the state’s case. In other words, the jury did not need to know why the defendant pulled the handgun, only that the defendant had possessed one. Moreover, the “exposure” incident of February 19 was not integral or inseparable from the events surrounding the offense committed by Donald on the following day.
|9While we find this error harmless since the verdict actually rendered was surely unattributable to the error, we address Donald’s assignment of this error in view of the remand of this case for trial.

Remand or Acquittal

Donald has succeeded in arguing that S-2 was improperly admitted by the trial court. With trial error involving the admissibility of evidence, our supreme court in State v. Hearold, 603 So.2d 731, 734 (La.1992) has provided:
“[w]hen the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error, which was not harmless, in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).”
In reviewing the sufficiency of the evidence to support a conviction, we are guided by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). We must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that each element of the crime had been proven beyond a reasonable doubt. State v. Martin, 595 So.2d 592 (La.1992).
To convict a defendant of possession of a firearm by a convicted felon, the state must prove beyond a reasonable doubt that the defendant possessed a firearm; that he had previously been convicted of an enumerated felony; that at the time of the present offense, the ten-year statutory period had not elapsed from completion or suspension of the prior felony sentence; and general intent to commit the present offense. State v. Morvan, 31-511 (La.App.2d Cir.12/9/98), 725 So.2d 515, writ denied, 99-0186 (La.5/28/99), 743 So.2d 659; State v. Husband, 437 So.2d 269 (La.1983). After a review of all of the evidence presented in this case, including the LAPD records, it is clear that a rational juror could have believed that Donald was the same person who had committed a felony in California, that his sentence had not been completed within the ten-year statutory period, and that he was in possession of a firearm on February 20, 1998. At trial, three witnesses, including a police officer, observed Donald in possession of a handgun which was recovered by an officer at the scene.
Accordingly, while defendant is entitled to a reversal of the conviction because of the admittance of an improperly authenticated document, he is not entitled to an acquittal based on insufficiency of the overall evidence. Therefore, we remand the case to the trial court for a new trial. State v. Martin, 595 So.2d at 598; State v. *151 Tillman, 356 So.2d 1376 (La.1978); State v. Day, 410 So.2d 741 (La.1982). and

Conclusion

Based on the foregoing, the defendant’s conviction and sentence are reversed and this case is remanded to the trial court for a new trial.
REVERSED AND REMANDED.
BROWN, J., dissents with reasons.

. La.R.S. 14:95.1 states in pertinent part:
A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(13) which is a felony ... or any crime defined as an attempt to commit one of the above enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above enumerated crimes, to possess a firearm or carry a concealed weapon.

. A conviction of voluntary manslaughter falls within the enumerated felonies listed in La. R.S. 14:2(13).

. We note that while Donald did not object to the introduction of S-7 and certain other California documents, the lack of a seal on those documents also made them deficient for purposes of authenticity in view of our ruling on La. C.E. art. 902(1).

. The state’s lack of proof of an essential element of the crime cannot be supplied by defense counsel's admission in the pre-trial motion and in closing statements which indicated that defendant was a convicted felon. Defendant’s pre-trial argument under the Old. Chief ruling, noted above, was abandoned, and a defense counsel’s statement in closing is not evidence upon which the state may rely. State v. Bindom, 410 So.2d 749 (La.1982).